EDWIN BRADLEY & another *vs.* NATHANIEL L. WHITE & another.

By an agreement between D. and W., D. was to furnish goods for a store and pay all the expenses, and W. was to transact the business of the store, and receive half of the profits, as a compensation for his services. *Held,* in an action against W. & D. for goods sold and delivered to D., that they were not partners, and that D. only was liable for the goods.

THE defendants were sued in an action of assumpsit, as partners doing business at Malden, under the firm of " B. W. Dodge," to recover two promissory notes, amounting to $914·63, given to the plaintiffs by said Dodge, and also for the sum of $563·93, for goods.

When the case came on for trial, it was admitted that said notes were given for goods sold and delivered to Dodge by the plaintiffs, and that other goods, to the amount of $563.93, had been sold and delivered by them to him.   It was also admitted that Dodge failed in 1843, and left Malden, and that he afterwards returned, and on the 6th of February 1844 was discharged under the insolvent law of 1838.   The only question, therefore, at issue between the parties was, whether the defendant White was a partner with Dodge, the other defendant, and liable with him on said notes and for said goods.  The plaintiffs called Charles Lewis as a witness, whose testimony was as follows :  " I have known the defendants twelve years.   Dodge began keeping store in July 1842, and White went into the store when he began, and had the management of it so long as Dodge remained in Malden.   White had the general charge of the business.   I have had conversation with White several times, before and after this suit was commenced.  About four months ago, the subject of a partnership was spoken of, and White stated to me that the agreement between

him and Dodge was, that he was to have one half of the profits for his services; that neither he nor Dodge considered there was any copartnership between them; but if the fact that he received one half of the profits made him a partner in law, then he was. I have conversed with White since I was summoned as a witness at the present term of the court. I told him I might be called, and he said he had never told but one story. I had dealings at the store. The sign was ' B. W. Dodge,' and the business was done in his name."

On cross-examination, this witness testified as follows: " White said he was to have one half the profits, Dodge to furnish a boy and bring out the goods; and he said nothing was said as to bad debts, one way or the other, between them. He said he was acquainted with all the people, and would not make bad debts unless Dodge ordered him. He said half the profits was a compensation for his service. I think he said ' profits.' If he had said ' gross profits,' I think I should have stated so. I did not think ' gross ' a material word."

After this testimony was given, it was agreed by the parties that it should be taken as the facts of the case, and that the question of partnership should be submitted to the court on these facts, and that the court might order a nonsuit or default, as they should decide thereon.

*Willey & H. G. Hutchins*, for the plaintiffs.

*Mellen & Parmenter*, for White.

HUBBARD, J. From the facts proved in the case, it is very clear that the defendants intended to create no contract of partnership between themselves, and that White was but the agent of Dodge in transacting the business of the store. Dodge furnished the goods and paid all the expenses, and White was to have one half the profits for his services. He had no interest in the stock itself, nor in the credits given for goods sold. His share of the profits was a compensation for his labor, without any lien on the same to the exclusion of creditors. We are not then called upon, by any stubborn rules of law, to create a relation between the parties which was never intended, and thus turn an agent into a

partner, for the benefit of third parties whose interests are not affected by the mode of payment.

It is true that there are subtle distinctions in the matter of partnership, as to the difference between profits and net profits, or profits "as profits," but it is unnecessary to discuss those distinctions again, in the vain hope of shedding new light on the subject, after the recent and full discussion they have undergone in the case of *Denny* v. *Cabot*, 6 Met. 82. That case settles the point, that a compensation for labor and services to an agent, by a portion of the profits, does not constitute a partnership between them, nor create a liability on the part of the agent, to respond for the debts of the principal. We consider that case to be decisive of the present. See also *Blanchard* v. *Coolidge*, 22 Pick. 151. *Vanderburgh* v. *Hull*, 20 Wend. 70. *Ambler* v. *Bradley*, 6 Verm. 119. *Loomis* v. *Marshall*, 12 Connect. 69. Story on Part. §§ 36, 38.

*Plaintiffs nonsuit.*